United States District Court
Southern District Court of Indiana

Virgil Griffin,
  Plaintiff,

V.

R. Carter, et al,
  Defendants.

Case No. 1:19-CV-00882-JPH-MPB

SCANNED at PENDLETON and Emailed on 05/28/19 by KL - 12 pages.

FILED
10:42 am, May 29, 2019
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Laura A. Briggs, Clerk

Advisory Memorandum of Authority In Support Of Amended Complaint

## Introduction

Comes now, Plaintiff, Virgil Griffin, pro se, pursuant 42 U.S. 1983 and files this advisory memorandum of authority in support of his Amended Complaint.

## Background

On March 1, 2019, the Plaintiff filed a Complaint alleging Constitutional violations of his rights to be free of cruel and unusual punishment. On May 20, 2019, the Court ordered the Complaint to be amended. The Plaintiff Amended the Complaint alleging:

1. IDOC, PCF, and Mental health officials and staff failed to protect him from being stabbed in deliberate indifference to his U.S. Constitutional rights under the Eighth Amendment.

1

2. IDOC, PCF, Medical and private Contractor Wexford Health officials and staff engaged in acts and omissions that denied, delayed and interfered with adequate medical treatment for his serious medical needs causing pain and suffering in deliberate indifference to his U.S. Constitutional rights under the Eighth Amendment.

3. Medical staff engaged in acts knowing to cause unnecessary infliction of pain in deliberate indifference to his U.S. Constitutional rights under the Eighth Amendment.

4. IDOC, PCF, and Medical Officials and staff engaged in retaliatory acts and harrassment in violation of his U.S. Constitutional rights under the Eighth and First Amendments, resulting in pain and suffering.

5. IDOC, PCF, Mental health and private Contractor Wexford Health officials and staff engaged in acts and omissions that **caused** and condoned the plaintiff to be subject to unsafe, unsanitary, cold, disfunctional, inhumane living conditions causing pain and suffering in violation of his U.S. Constitutional rights under the Eighth Amendment.

## ARGUMENT 1

In Farmer v. Brennan, 511 U.S. 825, 834 (1994) the U.S.

Supreme Court establish a two pronged test to determine whether an incarcerated person had been subject to an Eighth Amendment Violation as a result of prison official's failure to protect someone from an assault by another incarcerated person. First, whether prison officials and staff knew there was a substantial risk of serious harm; Second, whether they failed to reasonably respond to protect someone.

In Santiago v. Walls, 599 F.3d 749, 756 (7th Cir. 2010) the Court noted that a prisoner faced an objective risk of serious injury because of inmate threats and attacks; and deliberate indifference by prison officials to prisoners' welfare when they "effectively condones the attack by allowing it to happen."

The Seventh Circuit in Pierson v. Hartley, 391 F.3d 898, 903 (7th Cir. 2004) held that "it does not matter 'whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation faces such a risk'."

In the Plaintiff's case Ryan Eslick was on a mission, mentally and emotionally disturbed, and he was not shy about publicizing the extent to which he would go to accomplish that mission and his conduct reflected the seriousness of the situation. He had been engaging in self-harm, violent disruptions, threats to staff, an assault

3

on another person, Joshua Harter, in the shower area by spraying him with feces and urine from inside the shower and continued repeated threats to anyone who would listen that he would assault "ANYONE" he could until he was transfered. Despite all these facts the defendants didn't take him serious and failed to act. Not only did they fail to act before the attack, they failed to act after attack on the plaintiff and failed to act after the attempted attack on Dr. Talbot. Instead they chose to focus on Moving Anthony Martin in retaliation, the day the plaintiff's initial complaint was logged in the District Court, on the basis of emergency for "administrative purposes" to the back on 6C range where he could not be heard.

The Seventh Circuit in Brown v. Budz, 398 F.3d 904, 909-916 (7th Cir. 2005) held that a high level official and custodial officials "cannot escape liability for deliberate indifference by showing that while he was aware of an obvious, substantial risk to inmate safety, he did not know the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." See Farmer, 511 U.S. at 843.

IDOC and PCF policy and Indiana Statue directs the defendants to keep tabs on security threats and correct safety

4.

risk immediately, even to modify privilege of people confined to administrative housing/restrictive housing who presents such threats. I.C. 11-11-6-2.; IDOC policy 02-01-111 Sections X; XII; XIII; XIV; PCF policy III; IX; XI (A)-(B); XII; XIV; IDOC policy 00-02-201

## ARGUMENT 2

In Estelle v. Gamble, 429 U.S. 97, 103 (1976) the U.S. Supreme Court held that the government must provide "medical care for those whom it is punishing by incarceration," establishing that it is an Eighth Amendment violation when officials show "deliberate indifference to serious medical needs."

A claim of deliberate indifference to serious medical needs must establish, first, that the medical condition is sufficiently serious; and, second, that officials knew of and disregarded an excessive risk to inmates health. Farmer v. Brennan, 511 U.S. 825, 834 (1994). One example of such deliberate indifference is a prison or medical official who "intentionally denies or delays access to medical care intentionally, interfers with the treatment once prescribed." Estelle, 429 U.S. at 104-105

The Seventh Circuit in Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005) held that a sufficiently serious medical condition is one that has been diagnosed by a physician as mandating

5

treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention; and, that it is enough to show that the defendants knew of and disregarded a substantial risk of harm to the incarcerated person.

In the Plaintiff's case, he had been stabbed with a spear by Ryan Eslick, someone notoriously known to hoard, throw and assault with feces and urine, leaving a noticable puncture wound. Lay prison staff including Case Work Manager Evans, Sergeant Sarten, and Lieutenant McCutcheon observed the injury and believed it needed treatment. Dr. Talbot ordered a range of treatments, including antibiotics, a tetanus shot, and blood hepatitis and HIV test as a result of the stab injury by a known biological threat risk, Eslick.

However, as a result of the policy, practice and custom of Wexford Health, the malicious disregard by nurse Carrie Stephens and the deliberate indifference of custody staff, possibly in an effort to cover-up their failure to protect, allowed the injury to fester. Evidence of the awareness of the risk to the plaintiff's health of a biological nature was obvious in the orders for a tetanus shot, antibiotics and hepatitis and HIV tests. Despite what was obvious, the plaintiff did not receive even as much

6

as a bandaid, alcohol swabs, or antibiotic ointment.

As the wound festered and the Plaintiff became sick, only afterwards and only upon extensive wrangling and persistent complaints, did the defendants provide him with the late ineffective tetanus shot, oral antibiotics, and the hepatitis and HIV tests (the results of which was still unknown as of May 23, 2019).

In Edwards v. Snyder, 478 F.3d 827, 831-832 (7th Cir. 2007) the Seventh Circuit held that Edwards stated a claim for relief when he complained of a "delay" in receiving medical treatment and that the receipt of some treatment does not necessarily defeat a claim of deliberate indifference.

In Roe v. Elyea, 631 F.3d 843, 858, 864-865 (7th Cir. 2011) the Seventh Circuit held that the Eighth Amendment protects incarcerated people not only from diberate indifference to current serious health problems, but also risk of serious damage to future health; and that an employee's overnight delay in providing treatment for an inmates infection cause "many more hours of needless suffering." The Sixth Circuit in Hicks v. Frey, 992 F.2d 1450, 1457 (6th Cir. 1993) held that "the fact that a wound eventually healed did not mean that a plaintiff suffered no pain that could constitute cruel and unusual punishment from interruption in a prescribed course of treatment."

7

The Plaintiff, Griffin, suffered physically, mentally and emotionally as a result of the defendants delay and interference, and Wexford's policies, practice and customs places the plaintiff at risk of future harm of inadequate treatment as well.

IDOC Policy and Indiana Statue directs the defendants to ensure adequate health services are provided for serious medical issues, and preventive services and that access that is unimpeded, and instructs the Warden and Doctor to guarantee those services, and makes the Commissioner responsible for overseeing and reviewing inadequate services by private contractors. However, the actual policy, practice and custom of Wexford and medical employees conflicts with these noble standards and the Commissioner and Warden has turned a blindeye to this reality.

IDOC policy 01-02-101 Sections II; IV; V; VII; XI. I.C. 11-8-2-5.

Supervisory officials face liability under 1983 when they act or fail to act in deliberate indifference or reckless disregard of a plaintiff's constitutional rights. See *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000). If officials had reason to know that their medical staff were failing to treat or inadequately treating an inmate liability is possible. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). The sheer number of grievances and lawsuits makes indicates that any lack of knowledge in regards

8

Wexford's and medical staff's practices intentional willful ignorance. Supervisors are liable when they turn a blind eye for fear of what they might see. Jones v. City of Chicago, 856 F.2d 985, 992 (1988 7th Cir).

Finally, prison official duty to provide reasonable medical care in non-delegable. Contracting with private health services agencies will not relieve them from this constitutional obligation. Henderson v. Jenkins, 672 F. Supp. 1054, 1063 (1987

## ARGUMENT 3

In Greeno v. Daley, 414 F.3d 645, 655 (7th Cir. 2005) the Court highlighted White v. Napoleon, 897 F.2d 103, 108 (3rd Cir. 1990) stating that it is a Eighth Amendment violation when medical staff insisted on continuing courses of treatment that they know are painful and ineffective.

In Farmer v. Brennan, 511 U.S. 825, 835 (1994) the Court held prison official are liable when they know of and disregard a substantial risk of harm in carrying out an act or omission. The Court also stated that the deliberate indifference standard is satified by something less than acts or omissions for the very purpose of

9

causing harm or with the knowledge that harm will result.

Because the Plaintiff's case deals with medical staff and inadequate treatment leading up to the injurious act, it is easy to get lost in considering this claim solely in medical dimensions, but the reality is that the Plaintiff was knowingly subject to a harmful course of action with the knowledge this harmful course of action served no legitimate professional or penological purpose. The course of action that the plaintiff was subject to was similar to unconstitutional experimentation, yet the defendant, Nurse Groves knew that giving the Plaintiff a tetanus shot that was late would cause pain and that the tetanus shot would be ineffective. In addition, the procedure posed risk that came to bear after it was done, in that the Plaintiff has suffered prolonged discomfort and semi-loss of sensation in his hand and arm.

Even if the plaintiff was not subject to harmful experimentation, he was at minimal treated not as a patient, but as a nuisance described in Hughes v.

Joliet Correctional Center, 931 F.2d 425, 428 (7th Cir. 1991) by the Seventh Circuit and at the minimal was subject to the Eighth Amendment violation recognized in Greeno, 414 F.3d at 655 by conducting a treatment upon him known not only by Nurse Groves, but all her peers to be painful and ineffective to shut the plaintiff up about his complaints against medical staff.

IDOC policy specifically states that staff will avoid and refrain from treatments that are not necessary and are ineffective. IDOC policy 01-02-101 Sections II, V, and XVI.

## ARGUMENT 4

In Mays v. Springborn, 575 F.3d 643, 649-651 (7th Cir. 2009) the Court laid out the standard for establishing harrassment and retaliation.

The Plaintiff believes the facts in his case meets those standards, and because the plaintiff's form of complaints were both written and oral the Court's analysis in Pearson v. Welborn, 471 F.3d 732, 741 (7th Cir. 2006) is instructive.

Thus establishing abusive harrassment and retaliation in stating a claim.

11

# ARGUMENT 5

Because the plaintiff raises various aspects to his claim of unsafe, unsanitary, cold, disfunctional, inhumane living conditions he points to only a few instructive cases.

Fruit v. Norris, 905 F.2d 1147 (8th Cir. 1990); Kitt v. Ferguson, 750 F. Supp 1014 (1990); Isby v. Clark, 100 F.3d. 502 (7th Cir. 1996)

Respectfully Submitted,

Virgil Huffin