UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

VIRGIL GRIFFIN,                          )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )          No. 1:19-cv-00882-JPH-MPB
                                         )
R. CARTER, et al.                        )
                                         )
                    Defendants.          )

**Entry Granting Motion to Correct Possible Erroneous Attached Documentary Evidence,
Screening Fifth Amended Complaint and Dismissing Insufficient Claims,
and Directing Further Proceedings**

**I.      Granting Motion to Correct
Possible Erroneous Attached Documentary Evidence**

The plaintiff's "motion to correct possible erroneous attached documentary evidence," dkt.

[27], is **granted**. The Court will treat the documents attached to the plaintiff's motion as exhibits

attached to the fifth amended complaint.

**II.      Screening of the Complaint**

**A.      Screening Standard**

Plaintiff Virgil Griffin is an inmate currently incarcerated at Pendleton Correctional

Facility. Dkt. 28. Because the plaintiff is a "prisoner" as defined by 28 U.S.C. § 1915A(c), this

Court has an obligation under 28 U.S.C. § 1915A(a) to screen his complaint before service on the

defendants. Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the complaint if it is

frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant

who is immune from such relief. In determining whether the complaint states a claim, the Court

applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints such as that filed by the plaintiff are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

### B.    Plaintiff's Complaint

On March 1, 2019, Mr. Griffin initiated this case under 42 U.S.C. § 1983 alleging various violations of his constitutional rights. He names thirty-one defendants: (1) Robert Carter; (2) Michael Osburn; (3) Dushan Zatecky; (4) Dennis Reagle; (5) Duane Alsip; (6) John Safford; (7) Chad Evans; (8) Mike Conyers; (9) Jeremy Ruttan; (10) Jerry Gilley; (11) Jim Boldman; (12) Charles Rinehart; (13) Joshua Shaver; (14) Joseph McCutcheon; (15) Steven Hill; (16) Kathleen Simone; (17) Jason Ernest; (18) Jerry Holmes; (19) Sergeant Sarten; (20) Officer Fish; (21) Officer Hargus; (22) John Doe, Executive Director of Classification; (23) John Doe, Deputy Commissioner of Operations; (24) Roger Perry; (25) Ciemone Easter-Rose; (26) Martin Perdue; (27) Paul Talbot; (28) Carrie Stephens; (29) Brittany Moore-Groves; (30) Nurse M. Walker; and (31) Wexford Health. He sues all of the defendants in both their individual and official capacities. He seeks injunctive relief and compensatory and punitive damages.

Mr. Griffin alleges that, on February 11, 2019, inmate Ryan Eslick stabbed him with a "spear."[1] Dkt. 28 at 10. This occurred while Mr. Eslick was in the shower and Mr. Griffin was passing by the shower. Mr. Griffin alleges that, prior to this incident, Mr. Eslick had warned Lieutenant Ernest, Mental Health Specialist Perdue, and Dr. Easter-Rose that he would assault

---

[1] Although Mr. Griffin claims that he was stabbed with a spear, the documents attached as exhibits to his complaint indicate he was stabbed with a pen. *See* dkt. 27-1 at 3, 4, 6.

people and continue to escalate his assaults until he was provided appropriate mental health treatment. He also contends that Sergeant Holmes, Officer Fish, and Officer Hargus knew of Mr. Eslick's "history of being a threat and continued risk or assault to others," yet chose not to separate him from the other inmates for showering. Dkt. 28 at 11, 14.

Mr. Griffin alleges that several defendants knew of the "threat and risk [Mr.] Eslick posed to those around him" through incident reports, conduct reports, threats made by Mr. Eslick to mental health and custody staff, and Mr. Eslick's "classification transfer papers and mental health reports." Dkt. 28 at 11-17. These individuals include Case Work Manager Evans, Unit Team Manager Safford, Deputy Warden Reagle, Deputy Warden Alsip, Warden Zatecky, Regional Director Michael Osburn, Indiana Department of Correction ("IDOC") Commissioner Robert Carter, the IDOC Executive Director of Classification, the IDOC Deputy Commissioner of Operations, Captain Ruttan, Captain Gilley, Captain Boldman, Captain Rinehart, Lieutenant Shaver, Lieutenant McCutcheon, Lieutenant Hill, and Lieutenant Simone.

After the incident, Sergeant Holmes notified Nurse Moore-Groves of Mr. Griffin's injuries, but Nurse Moore-Groves said she could not provide any treatment without a doctor's orders. The next day, February 12, 2019, Dr. Talbot conducted doctor visits but refused to see Mr. Griffin because he was not on the list. Mr. Griffin then spoke with Mr. Evans, Sergeant Sarten, and Lieutenant McCutcheon about receiving medical treatment. Later that same day, Dr. Talbot evaluated Mr. Griffin and recommended a tetanus shot, antibiotics, and a blood draw to determine whether Mr. Griffin had contracted any contagious diseases. Mr. Griffin alleges that Dr. Talbot, Lieutenant McCutcheon, and Sergeant Sarten told him to get ready to go to the infirmary, but Sergeant Sarten failed to take him.

On February 13, 2019, Mr. Griffin complained to Nurse Stephens, and she said she would send someone "later in the week to do blood draws and tetanus shots/lab work." Dkt. 28 at 21. Mr. Griffin submitted a complaint form the next day about the failure to provide the tetanus shot, and he alleges that "an infection had begin to set in." Dkt. 28 at 22.

Five days after the incident, on February 16, 2019, after more complaints about the alleged denial of medical care, Nurse Walker indicated she would leave instructions for the nighttime medical staff to provide treatment to Mr. Griffin. Nurse Moore-Groves administered a tetanus shot to Mr. Griffin on February 17, 2019. She warned him that it might not be effective because it was not given within forty-eight hours of the incident and that it would hurt. Mr. Griffin alleges that the shot caused "deep bone and nerve pain" and that another nurse advised him that the pain might be caused by the tetanus shot being given "too close to the bone." Dkt. 28 at 23-24.

Mr. Griffin asserts that Wexford has a policy of denying and delaying medical treatment to lower costs and this policy was the cause of his inadequate medical treatment. He similarly alleges that the IDOC continues to contract with Wexford "despite knowing that the mental and medical health care contractors knowingly engage in practices that are dangerous and threaten the safety, health, and wellbeing of prisoners." Dkt. 28 at 24-25.

Mr. Griffin also alleges that on February 18, 2019, during a chronic care visit with Dr. Talbot and while complaining about the lack of medical treatment for his injury from the incident with Mr. Eslick, Dr. Talbot raised false allegations that Mr. Griffin had been smoking. Dr. Talbot then threatened to shake-down Mr. Griffin and his cell. He contends the threatened shake down was in retaliation for his complaints about the medical care he received.

Mr. Griffin identifies two other alleged retaliatory events that occurred after he initiated this action: (1) on March 6, 2019, someone woke him up by banging on his cell wall and then

yelled that he should stop filing lawsuits; and (2) he was one of two inmates subjected to a shake down and strip search in April 2019. He seeks to hold liable Warden Zatecky, Deputy Warden Reagle, Deputy Warden Alsip, Captain Ruttan, Captain Gilley, Captain Rinehart, Captain Boldman, Major Conyers, Lietenant Hill, Lieutenant McCutcheon, Lieutenant Shaver, and Lieutenant Simone on the theory that they "failed in properly training the staff members who engaged in these retaliatory actions." Dkt. 28 at 34.

Finally, Mr. Griffin contends that the conditions of his confinement violate his constitutional rights. He alleges that, as a result of improper psychiatric treatment for other inmates, he must live in an "unsafe, unsanitary, disfunctional [sic], and inhumane environment." Dkt. 28 at 34-40. He identifies twenty-six defendants for this claim: IDOC Commissioner Carter, Regional Director Osburn, the IDOC Executive Director of Classification, the IDOC Deputy Commissioner of Operations, Warden Zatecky, Deputy Warden Reagle, Deputy Warden Alsip, Unit Team Manager Safford, Case Work Manager Evans, Major Conyers, Captain Ruttan, Captain, Gilley, Captain Boldman, Captain Rinehart, Lieutenant Shaver, Lieutenant McCutcheon, Lieutenant Hill, Lieutenant Simone, Lieutenant Ernest, Sergeant Holmes, Correctional Officer Fish, Correctional Officer Hargus, Dr. Perry, Dr. Easter-Rose, Mental Health Specialist Perdue, and Wexford.

### C.    Analysis

Applying the screening standard to Mr. Griffin's complaint, some claims are dismissed while other claims shall proceed.

#### 1.  Failure to Protect

Jail officials have a duty to protect inmates from violent assaults by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To state a claim for failure to protect, an inmate must assert:

"(1) that he was 'incarcerated under conditions posing a substantial risk of serious harm' and (2) that the defendants acted with 'deliberate indifference' to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834). Damages for "a deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence," *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000), or fear of an unrealized attack, *see Babcock v. White*, 102 F.3d 267, 270 (7th Cir. 1996). Rather, to sufficiently plead a claim for failure to protect, an inmate must "allege facts sufficient to show 'that the defendants had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" *Santiago*, 599 F.3d at 756 (quoting *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997)).

Here, Mr. Griffin has alleged that several individuals had knowledge of the threat posed by Mr. Eslick merely because they received conduct reports, incident reports, and classification papers pertaining to Mr. Eslick. These allegations are insufficient to show that these individuals had actual knowledge of an easily preventable impending harm against Mr. Griffin. The Eighth Amendment failure to protect claims against defendants Case Work Manager Evans, Unit Team Manager Safford, Deputy Warden Reagle, Deputy Warden Alsip, Warden Zatecky, Regional Director Michael Osburn, IDOC Commissioner Robert Carter, the IDOC Executive Director of Classification, the IDOC Deputy Commissioner of Operations, Captain Ruttan, Captain Gilley, Captain Boldman, Captain Rinehart, Lieutenant Shaver, Lieutenant McCutcheon, Lieutenant Hill, Lieutenant Simone, and Major Conyers[2] **are dismissed** for failure to state a claim upon which relief may be granted.

---

[2] Although Mr. Griffin identified Major Conyers as a defendant in his legal claims section, *see* dkt. 28 at 41, he does not allege that Major Conyers received any of the documents allegedly sent to

Mr. Griffin's Eighth Amendment failure to protect claims **shall proceed** against defendants Lieutenant Ernest, Mental Health Specialist Perdue, Dr. Easter-Rose, Sergeant Holmes, Officer Fish, and Officer Hargus.

### 2. Deliberate Indifference

Mr. Griffin also contends the medical care he received after being stabbed by Mr. Eslick was insufficient. In order for an inmate to state a claim under § 1983 for medical mistreatment or the denial of medical care, the inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference exists only when an official "knows of and disregards an excessive risk to an inmate's health; the official must both be aware of facts from which the inference could be drawn and that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). Mr. Griffin's Eighth Amendment deliberate indifference claims relating to his medical treatment **shall proceed** against Lieutenant McCutcheon, Sergeant Sarten, Dr. Talbot, Nurse Moore-Groves, Nurse Walker, and Nurse Stephens.

### 3. *Monell* Claims

Because Wexford acts under color of state law by contracting to perform a government function, it is treated as a government entity for purposes of § 1983 claims. *See Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002). To state a cognizable deliberate indifference claim against Wexford, Mr. Griffin must allege that he suffered a constitutional deprivation as the result of an express policy or custom of Wexford, or as a result of action by an official with policy-

---

the other defendants or that he otherwise had any knowledge of a potential threat to Mr. Griffin, *see* dkt. 28 at 9-17.

making authority. *See Glisson v. Ind. Dept. of Corrections*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc). Mr. Griffin alleges that Wexford has a policy of denying and delaying medical treatment so as to lower the cost of medical care, so his allegations are sufficient to plausibly assert a Monell claim against Wexford. Mr. Griffin's Eighth Amendment policy claim against Wexford Health **shall proceed**.

Mr. Griffin attempts to also assert a claim against IDOC Commissioner Carter and Warden Zatecky on the basis that they continue to contract with Wexford Health to provide health services despite allegedly knowing that Wexford Health provides constitutionally deficient medical care. Dkt. 28 at 25-27. The first inquiry in every § 1983 case is whether there has been the deprivation of a right secured by the Constitution or laws of the United States, for without a predicate constitutional violation one cannot make out a *prima facie* case under § 1983. *Juriss v. McGowan*, 957 F.2d 345, 349 n.1 (7th Cir. 1992). Section 1983 is not itself a source of substantive rights; instead, it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). This claim falters at this point, even when liberally construed. The IDOC's decision to delegate the provision of medical services to Wexford Health does not implicate any of Mr. Griffin's constitutional rights. If he believes Wexford Health has a policy of providing constitutionally inadequate care, or that any employees of Wexford Health are providing constitutionally inadequate care, he can do what he has done in this case—assert a claim against Wexford Health or the individual employees. His attempt to include IDOC Commissioner and Warden Zatecky in such a claim—solely on the basis that they are responsible for the contract with Wexford Health—is unavailing. These claims are **dismissed** for failure to state a claim upon which relief can be granted.

### 4. Retaliation and Conditions of Confinement Claims

"When screening prisoners' complaints under the [Prisoner Litigation Reform Act ("PLRA")], courts can and should sever an action into separate lawsuits or dismiss defendants who are improperly joined under Federal Rule of Civil Procedure 20(a)(2)." *Mitchell v. Kallas*, 895 F.3d 492, 502 (7th Cir. 2018) (quoting *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011)). The Seventh Circuit has warned district courts to "beware of 'scattershot' pleading strategies" and "target for dismissal 'omnibus' complaints . . . that raise claims about unrelated conduct against unrelated defendants." *Id.* at 503. This warning arose "[o]ut of concern about unwieldy litigation and attempts to circumvent the PLRA's fee requirements." *Id.*; *see also Owens v. Evans*, 878 F.3d 559, 561 (7th Cir. 2017). "A prisoner may join defendants in the same action only if the claims against each one 'aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." *Mitchell*, 895 F.3d at 502-03 (citing Fed. R. Civ. P. 20(a)(2)(A) and *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)).

Mr. Griffin filed his original complaint in this action on March 1, 2019. Dkt. 1. That complaint presented failure to protect and deliberate indifference claims under the Eighth Amendment related to the attack on Mr. Griffin by Mr. Eslick. *See id.* After multiple amendments identifying several additional defendants, *see* dkts. 6, 10, 19, 26, Mr. Griffin now seeks to assert claims alleging retaliation and unconstitutional conditions of confinement. Two of the three allegations of retaliation occurred after Mr. Griffin filed his original complaint. The conditions of confinement claims relate to the adequacy of psychological services available at Pendleton Correctional Facility. These claims do not arise out of the same transaction, occurrence, or series of transactions or occurrences underlying Mr. Griffin's failure to protect and deliberate indifference claims.

Instead of *sua sponte* severing the retaliation and conditions of confinement claims into two new civil actions, Mr. Griffin shall have the opportunity to determine whether to pursue these claims as new actions or have them dismissed without prejudice. *Myles v. United States*, 416 F.3d 551, 552 (7th Cir. 2005) (noting that the composition and content of the complaint are entirely the responsibility of the plaintiff, for "even *pro se* litigants are masters of their own complaints and may choose who to sue-or not to sue"). If new actions are opened, Mr. Griffin will be responsible for a filing fee for each new case and the screening requirement of 28 U.S.C. § 1915A(b) will be triggered for each new case.

Mr. Griffin shall have **through August 9, 2019,** in which to **notify the Court** whether he wishes the Court to sever any claim into a new action, and if so, he shall identify which claims against which defendants. If Mr. Griffin fails to notify the Court, the misjoined claims will be considered abandoned and will be dismissed without prejudice.

### III.    Issuance and Service of Process

The clerk **is directed**, pursuant to Fed. R. Civ. P. 4(c), to issue process to defendants (1) Lieutenant Jason Ernest; (2) Mental Health Specialist Martin Perdue; (3) Dr. Ciemone Easter-Rose; (4) Sergeant Jerry Holmes; (5) Officer Fish; (6) Officer Hargus; (7) Nurse Brittany Moore-Groves; (8) Dr. Paul Talbot; (9) Nurse M. Walker; (10) Nurse Carrie Stephens; (11) Lieutenant Joseph McCutcheon; (12) Sergeant Sarten; and (13) Wexford Health. Process shall consist of the fifth amended complaint filed May 31, 2019 (dkt. 28), applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Entry.

### IV.    Summary

Mr. Griffin's Eighth Amendment failure to protect claims **shall proceed** against defendants Lieutenant Ernest, Mental Health Specialist Perdue, Dr. Easter-Rose, Sergeant Holmes, Officer

Fish, and Officer Hargus. His Eighth Amendment deliberate indifference claims relating to his medical treatment after being attacked **shall proceed** against Lieutenant McCutcheon, Sergeant Sarten, Dr. Talbot, Nurse Moore-Groves, Nurse Walker, and Nurse Stephens. His Eighth Amendment policy claim against Wexford Health **shall proceed**.

The **clerk is directed** to terminate from the docket all defendants except Lieutenant Jason Ernest, Mental Health Specialist Martin Perdue, Dr. Ciemone Easter-Rose, Sergeant Jerry Holmes, Nurse Brittany Moore-Groves, Dr. Paul Talbot, and Nurse Carrie Stephens.

The **clerk is directed** to add to the docket as defendants Officer Fish, Officer Hargus, Nurse M. Walker, Lieutenant Joseph McCutcheon, Sergeant Sarten, and Wexford Health.

**SO ORDERED.**

Date: 7/10/2019

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

VIRGIL GRIFFIN
998996
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

MENTAL HEALTH SPECIALIST MARTIN PERDUE
Medical Staff
PENDLETON CORRECTIONAL FACILITY
4490 W. Reformatory Road
Pendleton, IN 46064-9001

DR. CIEMONE EASTER-ROSE
Medical Staff
PENDLETON CORRECTIONAL FACILITY
4490 W. Reformatory Road
Pendleton, IN 46064-9001

DR. PAUL TALBOT
Medical Staff
PENDLETON CORRECTIONAL FACILITY
4490 W. Reformatory Road
Pendleton, IN 46064-9001

NURSE BRITTANY MOORE-GROVES
Medical Staff
PENDLETON CORRECTIONAL FACILITY
4490 W. Reformatory Road
Pendleton, IN 46064-9001

NURSE M. WALKER
Medical Staff
PENDLETON CORRECTIONAL FACILITY
4490 W. Reformatory Road
Pendleton, IN 46064-9001

NURSE CARRIE STEPHENS
Medical Staff
PENDLETON CORRECTIONAL FACILITY
4490 W. Reformatory Road
Pendleton, IN 46064-9001

WEXFORD HEALTH
Corporation Service Company
135 N. Pennsylvania Street, Suite 1610
Indianapolis, IN 46204

Electronic Service to the following IDOC employees:
       Lieutenant Jason Ernest
       Sergeant Jerry Holmes
       Officer Fish
       Officer Hargus
       Lieutenant Joseph McCutcheon
       Sergeant Sarten
       (All at Pendleton Correctional Facility)


Courtesy Copy to:

Doug Bitner
Katz, Korin, Cunningham PC
334 N. Senate Avenue
Indianapolis, IN 46204-1708